1
2
3
4
5
6            IN THE UNITED STATES DISTRICT COURT FOR THE
7                   EASTERN DISTRICT OF CALIFORNIA
8

9  RICARDO C. GARZA,              )        No. CV-F-08-437 OWW/GSA
                                  )
10                                )        MEMORANDUM DECISION AND
                                  )        ORDER GRANING IN PART WITH
11             Plaintiff,         )        LEAVE TO AMEND, GRANTING IN
                                  )        PART WITHOUT LEAVE TO AMEND,
12        vs.                     )        AND DENYING IN PART
                                  )        DEFENDANTS' MOTION TO
13                                )        DISMISS AND TO STRIKE (Doc.
   CITY OF TULARE, et al.,        )        5) AND DIRECTING PLAINTIFF
14                                )        TO FILE FIRST AMENDED
                                  )        COMPLAINT WITHIN 20 DAYS
15             Defendants.        )
                                  )
16  _____)

17
18
19        On March 25, 2008, Plaintiff Ricardo C. Garza, proceeding *in*

20  *pro per*, filed a "Complaint Asserting Causes of Action for Breach

21  of the Conventant [sic] of Good Faith and Fair Dealing, Race

22  Discrimination, Age Discrimination, Sex Discrimination, and

23  Retaliation."  Defendants are the City of Tulare and Does 1 - 50.

24        The Complaint alleges that Plaintiff was hired as an

25  operator for the City of Tulare wastewater treatment plant on

26  January 5, 1981.  The Complaint alleges:

                                  1

6.  Plaintiff ... alleges that in or about 1982, he became employed with the CITY OF TULARE as a Lab Technician.  The previous Lab Technician, Mr. Armand Chavez, was promoted to the Supervisor of the wastewater treatment plant.  Plaintiff was there when ... Mr. Chavez (retired in 1998), was promoted to the first supervisor of the division.  Plaintiff was there when the position of supervisor of the wastewater treatment plant was created and filled for the first time.

7.  Plaintiff hereby alleges that in or about 1987, he applied for the position of Superintendent for the wastewater treatment plant for the CITY OF TULARE.  The person who had been Superintendent, Mr. Gerald King, was promoted to Asst. to the Public Works Director in an 'In-House' promotion.  And as Asst. Public Works Director, he opened the recruitment for his replacement at the Wastewater treatment plant to the whole United States.  The person who got the position was Milt Perzler and he came from Reno, Nevada.  Mr. Gerald King has a daughter named Kelly Kay King.

8.  Plaintiff hereby alleges that in or about 1989, he became the first Industrial Waste Inspector for the CITY OF TULARE.

9.  Plaintiff hereby alleges that in or about 1996, he once again applied to be Superintendent of the Wastewater Treatment Plant.  The person who got the position was Mr. Jeffrey Mizenhimer.  Mr. Mizenhimer was 39 years old and Plaintiff was 46 years old at that time.  Plaintiff believes that Mr. Mizenhimer did not have a high school diploma at the time of his appointment.  Mr. Mizenhimer came from the City of Visalia and went back to the City of Visalia.

10.  In or about 1990, Plaintiff applied for a promotion to become the Wastewater Treatment Plant supervisor for the CITY OF TULARE.  Mr. Armand Chavez, the first supervisor retired in 1998.  Ms. Fallart had just gone into the Human Resources Dept.  She was asked to join that Department without having to go through a recruitment drill and

2

competing for such a position.  She oversaw
the recruitment for the Wastewater Treatment
Plant supervisor.  Plaintiff was placed last
of seven individuals who applied for the
position.  Plaintiff was the only person who
applied for the position who was not an
operator.  Everyone ahead of Plaintiff was an
operator and all of the interview board were
operators.  Plaintiff had been an operator
when he first started with the CITY OF TULARE
back in 1981.  The person who got the job was
Mr. Richard Bono, who had started as an
Operator in Training in 1987 or thereabouts.
It was after this denial that Plaintiff first
filed with the federal Agency, the EQUAL
EMPLOYMENT OPPORTUNITY COMMISSION (EEOC);
FEMA [sic] was better prepared.  Plaintiff
had to file a complaint with this Same Court.

11.  Plaintiff hereby alleges that in or
about 2002, he once again applied for the
position of the CITY OF TULARE Wastewater
Treatment Plant Superintendent.  The
Superintendent's position is above the
Supervisor's position.  Plaintiff was denied
by the oral interview board, because
Plaintiff was accused of 'having to much
baggage to carry.'  The other two applicants
did not get the job either, because one had a
criminal record and the other one wanted too
much money to take the job.  So no one was
hired.  The CITY OF TULARE instead hired an
outside company to oversee the direction of
the Wastewater Treatment Plant.  Plaintiff
believes that the company was paid about
$8,000.00 a month for such services.
Plaintiff could have done the same for one-
third the money if he had been given a
chance.  The company person stationed here
was a retiree who had the same credentials as
Plaintiff.  The citizens of the CITY OF
TULARE are not being served right.

12.  Plaintiff hereby alleges that in or
about 2004, he once again applied for the
position of the CITY OF TULARE wastewater
treatment plant superintendent.  The position
was given to Mr. Richard Bono who was the
CITY OF TULARE's supervisor and who had been
tutored by the company who had been hired by
the City to run the treatment plant.  As soon

3

as Mr. Bono got all of his credentials to be able to run the CITY OF TULARE wastewater treatment plant, the position was posted open, but only two people applied for it, Plaintiff and Mr. Bono.  Plaintiff was beaten out by Mr. Bono, because Plaintiff did not have any supervisory experience as was given to Mr. Bono.  Mr. Bono only has a Grade 4 operator's license which he got in 2004. Plaintiff has a Grade 4 license since 1983. That is why Mr. Bono did not apply for the Superintendent's position in 2002.  Mr. Bono is not certified for the laboratory and the industrial waste inspections.  The CITY OF TULARE has to pay extra to the current laboratory technician to direct the procedures in the laboratory.

13.  Plaintiff hereby alleges that in or about 2004, the wastewater treatment plant opened up a position for an Operator 3. Plaintiff applied for it because the Operator 3 position paid more than the Industrial Waste Inspector, but the Operator 3 position was going to be an assistant to the Industrial Waste Inspector which was the position held by the Plaintiff.

14.  Plaintiff hereby alleges that in or about 2005, the Wastewater Treatment Plant Supervisor position became available again. The position was made 'open' to the general public and available to any applicant who had the right qualifications.

15.  Plaintiff hereby alleges that he applied for this Wastewater Treatment Plant Supervisor position, but was not selected. Plaintiff further alleges that the position was available only to persons who had supervisory experience.  That would explain why the current supervisor got the job.  The current supervisor has worked for the CITY OF TULARE for only seven years as a wastewater treatment plant operator.  He does have experience supervising people who were recovering alcoholics, because that was his job before he came to work for the CITY OF TULARE.  Before that, he was a recovering alcoholic himself.  He was given the job to stop his grievance because the CITY OF TULARE

4

had left him out of the recruitment process
for the Operator 3 position and also to get
back at Plaintiff.  Talk about 'getting two
birds with one stone'!

The Complaint alleges a claim for "VIOLATION SECTION ??? -
RACE, AGE, AND SEX DISCRIMINATION."  After incorporating all
preceding allegations, this claim alleges:

21.  In 2005, Plaintiff applied for the
position of Wastewater Treatment Plant
Supervisor.  At this time, Plaintiff was
approximately 55 years of age, and had been
an employee with the CITY OF TULARE and for
the Wastewater Treatment Plant for
approximately 24 years.

22.  Plaintiff hereby alleges that the first
Wastewater Treatment Plant Supervisor had
held that position for approximately 18 years
prior, and that the second wastewater
treatment plant supervisor had held that
position for approximately 6 years.

23.  Plaintiff hereby alleges and believes
that he was qualified to perform the job of
Wastewater Treatment Plant Supervisor and
possessed all qualifications to perform the
job of Wastewater Treatment Plant Supervisor.

24.  Plaintiff hereby alleges that the CITY
OF TULARE did open the position of Wastewater
Treatment Plant Supervisor to the general
public and stated that anyone having the
qualifications posted could apply.

25.  Plaintiff hereby alleges that the CITY
OF TULARE in the past has developed a pattern
and practice in which they will have
positions that become vacant, supervisory
positions, and positions of promotions, which
will not be open to the general public, but
will be offered to current CITY OF TULARE
employees to be filled from within.

26.  Plaintiff hereby alleges that the CITY
OF TULARE did not permit the position of
Wastewater Treatment Plant Supervisor to be
filled from within and instead opened the

5

1        position to the general public.

2        27.  Plaintiff hereby alleges that the CITY
         OF TULARE's failure to permit this position
3        to be filled from within and their decision
         to open the position to the general public
4        resulted in disparate treatment to Plaintiff.
         Further, Plaintiff hereby alleges that the
5        CITY OF TULARE's refusal to permit this
         position to be filled from within and opening
6        it to the general public was the result of
         their discrimination against Plaintiff based
7        upon his race.

8        28.  Plaintiff hereby alleges that the CITY
         OF TULARE was aware that the Plaintiff did
9        not have a supervisory history, because the
         CITY OF TULARE had made sure that Plaintiff
10       did not get any supervisory experience in
         past years and if the CITY OF TULARE
11       requested that the oral interview board look
         only for supervisory experience Plaintiff
12       would not be picked as the most logical
         candidate for the promotion.
13
         29.  Plaintiff hereby alleges that the CITY
14       OF TULARE's motivation in opening this
         position to the public so that Plaintiff
15       would not be chosen as the Wastewater
         Treatment Plant Supervisor was motivated by
16       Plaintiff's race and age.

17       30.  Plaintiff hereby alleges that the
         individuals who were selected as top on the
18       eligibility list possessed less
         qualifications to be able to perform the job
19       duties as Wastewater Treatment Plant
         Supervisor and that Plaintiff's abilities and
20       credentials exceeded that of those
         individuals who were chosen ahead of him on
21       the eligibility list for the position except
         for supervisory experience which the CITY OF
22       TULARE has made sure that the Plaintiff will
         not possess.  The person who got the job
23       cannot apply for the CITY OF TULARE's
         Wastewater Treatment Plant Superintendent,
24       because he does not have the proper
         credentials to do so.  Plaintiff does have
25       the necessary credentials more so than the
         current Superintendent.
26

                        6

31.  Plaintiff hereby alleges that the CITY OF TULARE's success in not promoting Plaintiff to the position of Wastewater Treatment Plant Supervisor was an adverse employment action against Plaintiff and has adversely affected his employment with the CITY OF TULARE and any other employer because the Plaintiff cannot get any supervisory experience.  Plaintiff has applied with the CITY OF PORTERVILLE and the CITY OF MADERA where he was beaten out by individuals that got supervisory experience somewhere else, but not at the CITY OF TULARE.

This claim prays for a permanent injunction enjoining Defendants "from continuing to violate the rights of Plaintiff;" an order requiring Defendants "to reinstate Plaintiff to the job position of Wastewater Treatment Plant Supervisor with appropriate back-pay, lost seniority, and fringe benefits, prejudgment interest and otherwise;" award "all remedies to which Plaintiff is entitled to, including reimbursement for back-pay, past lost benefits, including retirement benefits, future lost wages, benefits, and an award of money damages to compensate Plaintiff for his emotional distress."

The Complaint alleges a claim captioned "BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING" and a claim captioned "INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS."

Attached to Plaintiff's Complaint is a copy of Plaintiff's "Formal Claim for Damages to the City of Tulare as Required by Government Code."  Plaintiff's Formal Claim for Damages is dated March 25, 2008, i.e., the day the Complaint was filed in this court.

Defendants move to dismiss the Complaint for failure to

state a claim upon which relief can be granted on the following grounds:

>    1.  All claims and causes of action set forth in the Complaint based upon facts and issues occurring prior to 2004 are barred by the doctrines of res judicata and collateral estoppel.
>
>    2.  Plaintiff's discrimination and retaliation claims must be dismissed as Plaintiff fails to plead the requisite exhaustion of administrative remedies.  As a result, these claims are time-barred.
>
>    3.  As a public entity, the City is immune from liability for discrimination under the Age Discrimination in Employment Act.
>
>    4.  Plaintiff has failed to exhaust his administrative remedies as to his breach of covenant and emotional distress claims because he has neither plead nor timely filed the required Government Tort Claim with the City.
>
>    5.  As a public entity, the City is immune from liability for intentional infliction of emotional distress, and this claim is time barred and barred by the exclusive workers' compensation remedies.
>
>    6.  Plaintiff's breach of the covenant of good faith and fair dealing claim does not apply to the City as a public employer.

Defendant also moves to strike the prayer for punitive damages on the ground of immunity.

    A.   <u>Plaintiff's Opposition to Motion to Dismiss</u>.

    The City filed this motion to dismiss or for more definite statement and motion to strike on April 23, 2008, noticing the motion for hearing on June 23, 2008.  Plaintiff did not file an opposition to the motion or statement of non-opposition within

the time required by Rule 78-230(c), Local Rules of Practice.  By

Order filed on June 13, 2008, the hearing on the motion to

dismiss was continued from June 23, 2008 to August 4, 2008:

> Plaintiff is advised that Rule 83-183(a),
> Local Rules of Practice, provides:
>
>> Any individual representing himself
>> or herself without an attorney is
>> bound by the Federal Rules of Civil
>> ... Procedure and by these Local
>> Rules.  All obligations placed on
>> 'counsel' by these Local Rules
>> apply to individuals appearing <u>in
>> propria persona</u>.  Failure to comply
>> therewith may be ground for
>> dismissal ... or any other sanction
>> appropriate under these Rules.
>
> Plaintiff is ordered to file an opposition to
> the motion to dismiss or a statement of non-
> opposition to the motion to dismiss within
> two weeks following service of this Order.
> Failure to timely comply will result in the
> dismissal of this action for failure to
> comply with this Order and for failure to
> prosecute.

On June 25, 2008, Plaintiff filed an opposition, which

states in its entirety:

> Plaintiff opposes the Motion to Dismiss filed
> by Defendant and Plaintiff will be present in
> the Courtroom of the Honorable Judge Oliver
> W. Wanger to give the reasons to continue the
> Complaint.  Plaintiff will be there [sic] on
> Monday, August 4, 2008.

By Order filed on July 28, 2008, the Court ruled:

> In Defendant's reply brief to the motion to
> dismiss, Defendant characterizes Plaintiff's
> June 25, 2008 opposition as effectively a
> non-opposition and requests that the Court
> deem Plaintiff's failure to substantively
> respond to the motion to dismiss a waiver and
> grant the motion on that basis.  Defendant
> further moves for the imposition of monetary

9

sanctions against Plaintiff.

Sanctions, either monetary or terminating, will not be imposed on Plaintiff at this juncture.

Plaintiff is ordered to file a written opposition to the motion to dismiss if he intends to oppose the motion, addressing substantively each of the grounds for dismissal asserted in the motion to dismiss and providing legal authority and analysis in support of Plaintiff's contentions why the motion to dismiss on the grounds asserted by Defendant should not be granted.  Unless and until Plaintiff does this, neither Defendant nor the Court can be prepared for oral argument and resolution of the motion to dismiss.  Under Rule 78-230(c), Local Rules of Practice, a party who fails to file an opposition has no right to be heard at oral argument.

Plaintiff shall file a written opposition in accordance with this Order on or before Monday, August 18, 2008.  Failure to timely and fully comply with this Order will result in the motion being heard on the merits and/or dismissal of this action.

The hearing on the motion to dismiss is continued from August 4, 2008 to Monday, October 20, 2008 at 10:00 a.m.  No continuance sought by Plaintiff will be granted.

On August 18, 2008, Plaintiff filed a pleading captioned:

Opposition to the Motion to Dismiss, Second Try; AND

MOTION TO OBTAIN LEGAL COUNSEL

Plaintiff's Opposition asserts that he opposes the motion to dismiss and that he "is uncertain as to what Defendant is asking for."  The opposition then describes the claims in the Complaint, attaching to the opposition what purports to be a notice of right

1   to sue issued by the EEOC on December 28, 2007, and a copy of

2   Plaintiff's Complaint against the City in No. CV-F-00-6172

3   REC/LJO.   Plaintiff's opposition then states:

4           Plaintiff has no education as a lawyer.
            Plaintiff cannot afford an attorney, because
5           Defendant will not promote Plaintiff so that
            Plaintiff can get more money to afford a
6           lawyer, but if Plaintiff had gotten the
            promotion, Plaintiff would not be suing.
7           Plaintiff has asked lawyer firms that the
            E.E.O.C. listed, but only two in the area
8           responded no.  (Copies enclosed) Plaintiff
            has called law firms in the L.A. - San Diego
9           area that informed Plaintiff that Plaintiff
            could not get anybody to help without pay
10          because no attorney will go into Court where
            everybody else in that Court room is getting
11          paid except for my attorney if he took on the
            case on a contingency basis.  So Plaintiff
12          cannot afford an attorney, Defendant will not
            promote Plaintiff, and Defendant will simply
13          raise taxes, and/or fees to pay for the
            attorney representing them.  Where's the
14          justice in that?

15          The Court has asked Plaintiff to cite
            authorities.  Herein, Plaintiff has enclosed
16          a copy of the 'right to sue' letter issued by
            the E.E.O.C.  Plaintiff is also enclosing
17          copies of other pleadings that Plaintiff has
            filed before; in the year 2000 with the
18          Fresno Federal Court with Judge O'Neill, and
            with the California state court.  Plaintiff
19          lost both cases because Plaintiff could not
            afford an attorney and Plaintiff knew nothing
20          about lawyering.  Plaintiff's treatment by
            the Defendant has been ongoing since last
21          century, but Plaintiff is not one to give up
            until a problem is solved.

22
            Plaintiff is puzzled as to why Defendant
23          would hire another firm to represent them.
            Plaintiff is certain that the firm
24          representing the Defendant is more expensive
            than the Visalia firm.  The legal counsel
25          that represented the Defendant in past cases
            was doing an adequate job, especially against
26          someone who has learned all legal terms and

                            11

> conditions from 'Matlock' and 'Perry Mason.'
> Because of the actions of the Defendant, the
> citizens of Tulare will have to pay more to
> cover the mistakes of the people that the
> Defendant has put in place to run the
> wastewater treatment plant.  Maybe that is
> why the EPA considers the City of Tulare
> number one on their list in the State of
> California concerning wastewater discharge.
>
> Plaintiff therefore, asks the Court to help
> Plaintiff in obtaining an attorney and help
> clear up this problem and maybe other
> problems dealing with the environment.

As will be discussed *infra*, Plaintiff's protestations of ignorance are not persuasive given that this is the third such lawsuit filed by him against the City of Tulare.  The fact that Plaintiff cannot retain counsel to represent him in this litigation does not excuse him from complying with the Federal Rules of Civil Procedure, the Local Rules of Practice, and Court Orders.  Plaintiff's comments about the law firm retained by the City to represent it in this lawsuit are irrelevant.[1]

_____

[1]Plaintiff's request for appointment of counsel is denied.  As a general rule, Plaintiff has no statutory or constitutional right to appointed counsel in a civil case, even if Plaintiff is indigent.  *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir.1986).  The Court has discretion to appoint counsel to represent a person proceeding *in forma pauperis* who is unable to afford counsel.  *United States v. $292,888.04 in U.S. Currency*, 54 F.3d 564, 569 (9th Cir.1995).  Here, Plaintiff is not proceeding *in forma pauperis*.  Plaintiff paid the filing fee when he commenced this action.  Appointment may be made in the Court finds that there are exceptional circumstances after evaluating the likelihood of success on the merits and the ability of the party to articulate his claims *pro se* in light of the complexity of the legal issues involved; the factors must be viewed together.  *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir.1991).  The Court cannot require an attorney represent Plaintiff.  *See Mallard v. United States District Court for the Southern District of Iowa*, 490 U.S. 296, 298 (1989).  Without a reasonable method of securing and compensating counsel, the Court will seek volunteer counsel only in the most

1    Defendant argues that Plaintiff's opposition filed on August

2  18, 2008 does not comply with the Court's Order and that the

3  motion to dismiss should be granted on this basis alone.

4    Although the Court concurs with Defendant, the merits of

5  Defendant's motion to dismiss will be addressed.  Plaintiff is

6  again warned that his continued failure to comply with the

7  applicable rules and orders of the Court may result in the

8  imposition of sanctions, including monetary and/or terminating

9  sanctions.

10    B.  <u>Motion to Dismiss</u>.

11      a.  <u>Governing Standards</u>.

12    A motion to dismiss under Rule 12(b)(6) tests the

13  sufficiency of the complaint.  *Novarro v. Black*, 250 F.3d 729,

14  732 (9th Cir.2001).  "A district court should grant a motion to

15  dismiss if plaintiffs have not pled 'enough facts to state a

16  claim to relief that is plausible on its face.'" *Williams ex rel.*

17  ───────────────

18  serious and exceptional cases.  This is not such a case.
       Title VII authorizes the appointment of counsel "[u]pon
19  application by the complainant and in such circumstances as the
    court may deem just ...."  42 U.S.C. §§ 2000e-5(f)(1)(B) and 16(d).
20  Three factors must be considered: (1) the plaintiff's financial
    resources; (2) the efforts plaintiff made to secure counsel; and
21  (3) whether plaintiff's claim has merit.  *Bradshaw v. Zoological
    Society of San Diego,* 662 F.2d 1301, 1318 (9th Cir.1981).  Plaintiff
22  has not demonstrated the first and third factors.  Although he
    avers that he cannot afford counsel, he presents no evidentiary
23  support for the averment and, as noted, Plaintiff is not proceeding
    *in forma pauperis.*  He has not demonstrated that his claims have
24  merit.  Plaintiff's two previous actions based on similar
    allegations were dismissed either on the merits by summary judgment
25  or for failure to state a claim.  With regard to Plaintiff's claim
    that Defendant's failure to promote him in 2005 was the result of
26  age, sex and race discrimination, the EEOC refused to proceed with
    the case.

*Tabiu v. Gerber Products Co.,* 523 F.3d 934, 938 (9th Cir.2008), quoting *Bell Atlantic Corp. v. Twombley*, ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007).  "'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, *id.* at 1964-1965.  Dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984).  In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002).  The court must construe a *pro se* plaintiff's pleadings liberally in determining whether a claim has been stated. *Ortez v. Washington County, State of Or.*, 88 F.3d 804, 807 (9th Cir. 1996); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003). Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Parrino v. FHP, Inc*, 146 F.3d 699, 705-706 (9th Cir.1988).

      1.   <u>Res Judicata/Collateral Estoppel</u>.

Defendant moves to dismiss any claims based on facts and issues prior to 2004 on the ground that these claims and issues are barred by res judicata and collateral estoppel.

Defendants request the Court take judicial notice of Plaintiff's pleadings and Court rulings in *Ricardo Garza v. City of Tulare*, United States District Court for the Eastern District of California, No. CV-F-00-6172 REC/LJO, and in *Ricardo Garza v. City of Tulare*, Tulare County Superior Court, Case No. 03-207476.

      a.   <u>Judge O'Neill's Case</u>.

Plaintiff's Complaint filed in the 2000 federal action alleged causes of action for age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*,

15

1  breach of the covenant of good faith and fair dealing, and

2  intentional infliction of emotional distress.  Plaintiff alleged

3  that he applied for a promotion to become the Wastewater

4  Treatment Plant Supervisor in 1999, that the City did not allow

5  the position to be filled from within, but opened the position to

6  the general public, that the City's decision to do so was the

7  result of discrimination against Plaintiff based on his age and

8  resulted in disparate treatment, that Plaintiff was qualified for

9  the position, and that Plaintiff was not selected for the

10 position because of his age.  Then Magistrate Judge O'Neill,

11 proceeding with the consent of the parties, granted summary

12 judgment for the City of Tulare.  The summary judgment order

13 states:

14        Since 1989, plaintiff has worked as an
          hourly, union inspector at the Waste Water
15        Treatment Facility ('WWTF') of defendant, a
          public municipality.  In 1999, plaintiff
16        applied for the then open WWTF supervisor
          position.  Defendant's management decided to
17        open applications for the supervisor position
          to the public, rather than limit applicants
18        to current employees, because the position
          involved management and supervisory
19        responsibilities.

20        The City posted and advertised the supervisor
          position and application process.  Plaintiff
21        and others submitted written applications for
          review by WWTF superintendent Jeffry
22        Misenheimer ... and defendant's Human
          Resources Manager Joseph Rios ... to select
23        the most qualified for interviews by a three-
          member committee.  The committee was
24        comprised of Scott Apple,, City of Visalia's
          WWTF Operations Supervisor, Louis Mendoza,
25        Wastewater Operator II for the Selma,
          Kingsburg, Fowler District, and Richard
26        Magnia, City of Hanford's Senior WWTF

16

1    Operator.   The committee members were not
     associated with, employed by or connected to
2    defendant.

3    The committee interviewed and ranked by
     scores seven applicants, including plaintiff
4    and three other employees of defendant.
     Based on the committee's scores, plaintiff
5    ranked last of the seven interviewed
     applicants.   Mr. Misenhimer proceeded down
6    the list of the seven applicants in order of
     the highest ranking to offer the supervisor
7    position.   Initially, Mr. Misenhimer offered
     the position to the first-ranked applicant,
8    who after initially accepting the position,
     turned it down.   The second-ranked applicant
9    was not offered the position after he
     informed Mr. Misenhimer he had not been
10   truthful about a felony conviction.   The
     third-ranked applicant declined because of
11   the pay scale and salary offered.   Mr.
     Misenhimer then contacted Richard Bono ...,
12   the fourth-ranked applicant and a WWTF
     operator for defendant.   Mr. Bono accepted
13   the supervisor position.   At that time,
     plaintiff was age 46 and Mr. Bono was age 42.
14   Defendant found Mr. Bono more qualified than
     plaintiff because Mr. Bono had actual
15   experience operating WWTF and plaintiff, an
     industrial wastewater inspector, did not.
16   Plaintiff acknowledges Mr. Bono is qualified
     to serve as supervisor but claims that he is
17   more qualified than Mr. Bono.

18       With regard to Plaintiff's age discrimination claim under

19   the ADEA, Judge O'Neill ruled:

20       Plaintiff's age discrimination (first) cause
         of action alleges defendant's 'refusal to
21       permit this [supervisor] position to be
         filled from within and opening it to the
22       general public was the result of [its]
         discrimination against Plaintiff based on
23       age' and plaintiff 'would have been the most
         logical candidate for promotion.'   Defendant
24       contends plaintiff cannot assert federal age
         discrimination claims because plaintiff's
25       remedy against defendant, a public entity, is
         a state action under state law.

26

                                17

The Age Discrimination in Employment Act
('ADEA'), 29 U.S.C. §§ 621 et seq., makes it
unlawful for an employer 'to fair or refuse
to hire ... any individual or otherwise
discriminate against any individual with
respect to his compensation, terms,
conditions, or privileges of employment,
because of such individual's age.'  29 U.S.C.
§ 623(a)(1).  'Employer' includes 'a State or
political subdivision of a State and any
agency or instrumentality of a State or a
political subdivision of a State.'  29 U.S.C.
§ 630(b).  In *Kimmel* [sic] *v. Florida Bd. of
Regents*, 528 U.S. 62, 92 ... (2000), the
United States Supreme Court held 'the ADEA is
not a valid exercise of Congress' power under
§ 5 of the Fourteenth Amendment.  The ADEA's
purported abrogation of the States' sovereign
immunity is accordingly invalid.'  The
Supreme Court further noted with the ADEA,
'Congress did not validly abrogate the
State's sovereign immunity to suits by
private individuals.'  *Kimmel* [sic], 528 U.S.
at 92 ...  In *E.E.O.C. v. City of St. Paul,*
500 F.Supp. 1135, 1143 (D.Minn.1980), *aff'd*,
671 F.2d 1162 (8th Cir.1972), the district
court held that a city which hired
firefighters was an 'employer' relative to
ADEA application.

Defendant correctly points out that plaintiff
cannot maintain his federal age
discrimination cause of action in this Court
because the ADEA does not validly abrogate
sovereign immunity available to defendant.
As noted by the *Kimmel* [sic] court, plaintiff
may pursue state age discrimination claims.

Moreover, as noted by defendant, there is no
evidence that defendant discriminated against
plaintiff based on age.  At the time in
question, Mr. Bono was age 42, four years
younger that plaintiff.  Plaintiff appears to
claim he was more experienced than Mr. Bono
and thus better qualified.  However, such
claim is not evidence to raise a question of
age discrimination given the process utilized
to select Mr. Bono, including the independent
three-member committee.

With regard to Plaintiff's claim of breach of the covenant

18

of good faith and fair dealing, Judge O'Neill ruled that public employment in California is held by statute, not contract.  As a matter of law, a city employee is not entitled to contract remedies against a city, and the employee's remedies are confined to those provided by statute or ordinance, citing *Hill v. City of Long Beach*, 33 Cal.App.4th 1684, 1690 (1995):

> As a public employee, plaintiff's employment is governed by statute or ordinance, not contract.  There is no evidence of a special relationship between plaintiff and defendant to impose liability for bad faith.  There is no evidence of express or implied promises to plaintiff that he was entitled to the supervisor position.  'The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy not directly tied to the contract's purposes.'  *Foley*, 47 Cal.3d at 689-690 ... Plaintiff is not entitled to pursue claims based on covenant of good faith and fair dealing.

With regard to Plaintiff's claim for intentional infliction of emotional distress, Judge O'Neill ruled:

> There is no evidence that defendant's alleged conduct was 'so extreme as to exceed all bounds of that usually tolerated in a civilized society.'  At most, plaintiff's experiences are common to the ordinary work place and to those competing over a promotion.  There is no evidence defendant intended to cause or did cause plaintiff severe emotional distress.  The evidence demonstrates no extreme and outrageous conduct to permit plaintiff's claim.
>
> In addition, defendant contends plaintiff's emotional distress claim is barred by exclusive workers' compensation remedies.  California courts have found that emotional distress caused by misconduct in employment relations involving promotions, demotions,

19

> criticism of work practices or negotiations
> as to grievances is a normal part of the
> employment environment.  A cause of action
> for such a claim is barred by the exclusive
> remedy provisions under workers'
> compensation.  Cal. Labor Code, § 3601(a);
> *Accardi v. Superior Court*, 17 Cal.App.4th
> 341, 352 ... (1993); *Cole*, 43 Cal.3d at 160
> ... Since plaintiff's emotional distress
> claims arise in the context of job promotion,
> they are a normal part of the employment
> environment and subject to workers'
> compensation exclusivity.

In December 2002, the Ninth Circuit affirmed Judge O'Neill's

grant of summary judgment for the City:

> The district court correctly granted the
> City's motion for summary judgment on Garza's
> claim of age discrimination in violation of
> the Age Discrimination in Employment Act ...
> because Garza did not establish a prima facie
> case of disparate treatment ....
>
> The district court also properly granted
> summary judgment on Garza's state law claim
> for breach of the implied covenant of good
> faith and fair dealing because the terms of
> Garza's employment are govered by statute,
> not contract ... Similarly, Garza's claim for
> intentional infliction of emotional distress
> is barred by the exclusive remedies provided
> under California's worker's compensation
> statute.
>
> Finally, we reject Garza's contentions that
> he did not understand the rules of procedure
> and was unable to present his side of the
> case because he did not have an attorney.
> *See Jacobsen v. Filler*, 790 F.2d 1362, 1364-
> 67 (9th Cir.1986)(rejecting pro se litigant's
> argument that district court had a duty to
> advise him of measures he should take to
> oppose defendants' summary judgment motion).

                    b.  <u>Tulare County Superior Court Case</u>.

On October 23, 2003, Plaintiff filed a complaint against the

City in the Tulare County Superior Court, Case No. 03-207476.  In

20

this Complaint, Plaintiff alleged that the City engaged in disparate treatment of Plaintiff by permitting the position of Wastewater Treatment Plant Superintendent to be open to the public while permitting other City of Tulare positions to be filled from within without being made open to the public; that the City engaged in age discrimination against Plaintiff in 1999 when the City refused to promote him and in October 2001 when the City did not place him on the eligibility list for the position of Wastewater Treatment Plant Superintendent; that the City breached the covenant of good faith and fair dealing which was contained in the employment relationship which existed between Plaintiff and the City; and that the City intentionally inflicted emotional distress on Plaintiff.

The City demurred to the Complaint.  On January 6, 2004, the Superior Court sustained the demurrer without leave to amend:

> Defendant demurrers on several grounds, (1) the complaint fails to state a cause of action for which relief may be granted; (2) the issues have previously been litigated and resolved on the merits in Federal Court; (3) Plaintiff failed to file the Complaint within the statutory limitations period and the California Tort Claims Act, and such failure is apparent from reference to the Complaint itself, and/or matters subject to judicial notice; (4) Public entities are not liable for breach of the covenant of good faith and fair dealing; (5) Plaintiff failed to exhaust administrative remedies mandated by federal law; (6) The City of Tulare is immune from liability for intentional infliction of emotional distress; (7) Intentional infliction of emotional distress is barred by the exclusive worker's compensation remedies; and (8) Public entities are not liable for punitive damages.  Most of these grounds are

21

1
2
3
4
5

well taken.  The court finds that this action
is barred by the statute of limitations and
the California Tort Claims Act.  This finding
alone is sufficient to sustain the demurrer
without leave to amend.  Plaintiff did not
oppose this demurrer, thus he has not shown
any ability to amend.  Therefore the court
grants the demurrer to the entire complaint
without leave to amend.

6

c.   <u>Governing Standards and Analysis</u>.

7     "Res judicata applies when 'the earlier suit ... (1)

8   involved the same "claim" or cause of action as the later suit,

9   (2) reached a final judgment on the merits, and (3) involved

10  identical parties or privies.'" *Mpoyo v. Litton Electro-Optical*

11  *Systems*, 430 F.3d 985, 987 (9th Cir.2005):

12
13
14
15
16
17
18

Whether the two suits involve the same claim
or cause of action requires us to look at
four criteria, which we do not apply
mechanically: (1) whether the two suits arise
out of the same transactional nucleus of
facts; (2) whether the rights or interests
established in the prior judgment would be
destroyed or impaired by prosecution of the
second action; (3) whether the two suits
involve infringement of the same right; and
(4) whether substantially the same evidence
is presented in the two actions.

19  *Id.*  All issues that were litigated or might have been litigated

20  as part of the cause of action are barred.  *Los Angeles Branch*

21  *NAACP*, 750 F.2d at 737 (9th Cir. 1984).  Under the "primary

22  rights" theory, "the right sought to be enforced determines the

23  cause of action."  *Los Angeles Branch NAACP*, 750 F.2d at 737.

24  The invasion of one primary right gives rise to one cause of

25  action for res judicata purposes; the invasion of more than one

26  primary right gives rise to as many causes of action as the

number of primary rights violated.   *See, e.g.*, *Sawyer v. First City Financial Corp.*, 124 Cal. App. 3d 390, 399 (1981). "California's rule, however, does not mean that different causes of action are involved just because relief may be obtained under either state or federal law, or under either of two legal theories."  *Los Angeles Branch NAACP*, 750 F.2d at 737.  As explained by the Ninth Circuit:

> Two recent California cases illustrate the distinction.  In *Mattson v. City of Costa Mesa*, 106 Cal. App. 3d 441, 447 ... (1980), the plaintiff had previously brought a federal civil rights action alleging assault and wrongful arrest.  He then brought an action in state court alleging that the same conduct constituted the common law tort of negligence.  The California Court of Appeal held that the second action was barred because both actions sought redress for injury to the plaintiff's interest in personal security and integrity.  To be contrasted with *Mattson*, is *Agarwal v. Johnson*, 25 Cal.3d 932, 160 Cal. Rptr. 141, 155 (1979).  There the plaintiff first brought suit in federal court for employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.  He subsequently was permitted to sue his employer in state court for the common law torts of defamation and intentional infliction of emotions distress arising out of the same discriminatory employment practice.  The California Supreme Court held that the federal action was brought to remedy the economic loss in wages, while the state action was brought to remedy the economic loss to the different interests in reputation and peace of mind.

*Los Angeles Branch NAACP*, 750 F.2d at 738.  The "cause of action" distinction is no different where the original judgment is entered in favor of the defendant;  the plaintiff will be barred

23

from later suit if the "primary right" test has been met.  7

Witkin, *California Procedure*, § 249 at 687-88 (1985).

"Under the collateral estoppel doctrine, 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *United States v. Stoddard*, 111 F.3d 1450, 1458 (9th Cir.1997):

> We have defined a three-prong inquiry for determining whether collateral estoppel operates to bar a second action between two parties: (1) where the issues in the two cases sufficiently similar; (2) was the issue fully litigated in the first action; and (3) was the issue necessarily decided in the first action.

*Id.*

Under these standards, Defendant is entitled to res judicata and/or collateral estoppel with regard to Plaintiff's claims of age, sex and race discrimination in connection with the failure to promote Plaintiff to Wastewater Plant Supervisor in 1999 and in 2001 and his claims of breach of the covenant of good faith and fair dealing and intentional infliction of emotional distress.  Both actions involved the same primary right, i.e., the right to be free from invidious discrimination in employment, *see Acuna v. Regents of Univ. of California*, 56 Cal.App.4th 639, 643-645 (1997); *Peterson v. State of California Dept. of Corrections ...,* 451 F.Supp.2d 1092, 1108 (E.D.Cal.2006), and the issues were actually litigated.  *SeeBarker v. Hull,* 191 Cal.App.3d 221, 225 (1987)(sustaining of a demurrer without leave

to amend satisfied the "actually litigated" requirement of the
collateral estoppel doctrine).

Defendant's motion to dismiss the Complaint to the extent
that it alleges employment discrimination based on age, race, or
sex for the failure to promote Plaintiff to Wastewater Plant
Supervisor in 1999 and 2001 is GRANTED WITHOUT LEAVE TO AMEND AND
WITH PREJUDICE.

### 2.  Failure to Exhaust Administrative Remedies.

Although the Complaint does not specify the statutory basis
for his claims of age, race and sex discrimination, Defendants
assume that Plaintiff is proceeding under the ADEA and Title VII
because the action is filed in federal court.

Both the ADEA and Title VII require that a plaintiff exhaust
administrative remedies prior to file a lawsuit by filing a
charge of discrimination with either the EEOC or the DFEH within
either 180 or 300 days after the alleged unlawful employment
practice occurred.  42 U.S.C. § 2000e-5(e)(1); *National Railroad
Passenger Corporation v. Morgan*, 536 U.S. 807 (2002); 29 U.S.C. §
626(e).  If the agency issues a notice of right to sue, the
plaintiff must file the lawsuit within 90 days of receipt of the
notice of right to sue.  *Id.*

Here, the Complaint does not allege compliance with these
requirements in connection with the alleged failure to promote
Plaintiff in 2005.  The only reference in the Complaint to
compliance with these requirements is in Paragraph 10 that
Plaintiff "first filed with the federal Agency, the EQUAL

EMPLOYMENT OPPORTUNITY COMMISSION (EEOC)" sometime after Mr. Bono was promoted in 1987.

Attached to Plaintiff's opposition to the motion to dismiss is a copy of a Notice of Right to Sue dated December 28, 2007. It appears that the Complaint was filed within the requisite 90 day period.

Defendant's motion to dismiss on this ground is GRANTED WITH LEAVE TO AMEND.  Plaintiff shall allege in the Second Amended Complaint his compliance with the exhaustion requirements for his federal and state claims for age, race and sex discrimination in connection with the City's failure to promote him to Wastewater Treatment Plant Supervisor in 2005, including the dates on which he filed charge(s) of discrimination with the appropriate agency and the dates on which he received notices of right to sue.[2]

### 3.   Age Discrimination Claim.

The City moves to dismiss Plaintiff's claim for age discrimination to the extent that it is based on the ADEA, relying on the holding in *Kimel v. Florida Bd. of Regents*, *supra,* 528 U.S. 62, 92 (2000), that the Eleventh Amendment bars Plaintiff's ADEA claim.

Although Judge O'Neill so held in granting summary judgment for the City in the 2000 case, the legal analysis in support of that ruling may have been incorrect.  Defendant is a city. Under

---

[2]No opinion is expressed concerning the timeliness of Plaintiff's charge(s) of discrimination based on age, race and sex under the governing statutes.

26

the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States." As a result, a *state* enjoys immunity from suit in federal court by citizens of other states or by its own citizens. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 616 (2002). This point was made by the Fifth Circuit in *Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir.2000):

> The Supreme Court in *Kimel* ... held that Congress exceeded its powers under § 5 of the Fourteenth Amendment by enacting the ADEA. As such, the states and their political subdivisions are protected by the sovereign immunity principle embodied in the Eleventh Amendment. In this case, however, Bishop is not a state; it is a city. Bishop argues that the *Kimel* Court noted that Congress did not have sufficient grounds to believe that state and *local* governments were engaging in age discrimination ...; thus, Bishop concludes that it, as a city, is immune from ADEA suits.
>
> However, the *Kimel* Court's comment about congressional findings has no relevance regarding whether a city has sovereign immunity from suit. That determination arises from the well-settled law under Eleventh Amendment jurisprudence regarding 'political subdivisions.' Not all political subdivisions are automatically immunized when the state is immunized ... 'We must look to see whether the entity in effect[] stands in the shoes of the state itself.' ....

The Ninth Circuit affirmed summary judgment for the City of Tulare in Judge O'Neill's case on the ground that Plaintiff had not made a *prima facie* case of age discrimination and not on the ground that the City was protected from an ADEA claim based on

27

the Eleventh Amendment.

As explained in *Belanger v. Madera Unified School Dist.*, 963 F.2d 248, 250-251 (9th Cir.1992), *cert. denied*, 507 U.S. 919 (1993):

> To determine whether a governmental agency is
> an arm of the state, the following factors
> must be examined: (1) whether a money
> judgment would be satisfied out of state
> funds, (2) whether the entity performs
> central governmental functions, (3) whether
> the entity may sue or be sued, (4) whether
> the entity has the power to take property in
> its own name or only the name of the state,
> and (5) the corporate status of the entity.

Defendant makes no showing that it is an arm of the state under these criteria.  Defendant's motion to dismiss Plaintiff's ADEA claim is DENIED WITHOUT PREJUDICE.

　　　　4.  <u>California Tort Claims Act</u>.

Defendant moves to dismiss Plaintiff's claims for breach of the covenant of good faith and fair dealing and intentional infliction of emotional distress relative to the 2005 failure to promote Plaintiff because the Complaint does not allege compliance with the claim requirement of the California Tort Claims Act.

Defendant requests the Court take judicial notice of Plaintiff's "Formal Claim for Damages to the City of Tulare as Required by the Government Code" attached as Exhibit J to the Declaration of Shelline K. Bennett.  Plaintiff's claim for damages was executed on March 25, 2008 and is stamped "received" by the City of Tulare Clerk's Office on March 26, 2008.  Thus,

Plaintiff executed his claim on the day he filed the Complaint in this Court and it was not received by Defendant until the day after he filed the Complaint.

The California Tort Claims Act requires an individual seeking money or damages from a public agency to first file a claim with the agency.  Cal. Gov. Code, § 900 et seq.; *Ard v. County of Contra Costa*, 93 Cal.App.4th 339, 343 (2001). Presentation of a timely tort claim is a prerequisite to maintaining such a cause of action against a public entity.  *Id.*; *see Hernandez v. McClanahan*, 996 F.Supp. 975 (N.D.Cal. 1998).  A plaintiff's pendent state law claims against a California public agency are barred unless the plaintiff has complied with the requirements of the Tort Claims Act before commencing a civil action.  *See Mangold v. Cal. Public Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).

California Government Code § 911.2(a) requires that a claim relating to a cause of action for personal injury be presented not later than six months after accrual of the cause of action and that a claim relating to any other cause of action be presented not later than one year after accrual of the cause of action.

Plaintiff's claim filed with the City of Tulare relates to events pertaining to the position of Wastewater Treatment Plant Superintendent that occurred in 1987, 1998, and 1999, and 2005. Therefore, from the face of Plaintiff's claim, his causes of action for breach of the covenant of good faith and fair dealing

and intentional infliction of emotional distress are time-barred as well as barred because Plaintiff did not comply with the claim requirements before commencing this litigation.

Defendant's motion to dismiss Plaintiff's claims for breach of the covenant of good faith and fair dealing and for intentional infliction of emotional distress is GRANTED WITHOUT LEAVE TO AMEND AND WITH PREJUDICE.[3]

C. <u>Motion to Strike</u>.

Defendant moves to strike Plaintiff's request for punitive damages on the ground that the City is immune as a matter of law from such damages pursuant to California Government Code § 818, and 42 U.S.C. § 1981a(b)(1).

Defendant's motion to strike is GRANTED.  Although the Complaint does not appear to pray for punitive damages, Plaintiff is not entitled to recover them from Defendant in this action. Plaintiff may not include a prayer for punitive damages against Defendant.

---

[3]Because of this ruling, the Court does not address Defendant's alternative grounds for dismissal of the claim for intentional infliction of emotional distress on the ground of Eleventh Amendment immunity and exclusivity provisions of California Workers' compensation law.

Dismissal of the claim for intentional infliction of emotional distress is also mandated because the claim is barred by the two year statute of limitation set forth in California Code of Civil Procedure § 335.1.

Dismissal of Plaintiff's claim for breach of the covenant of good faith and fair dealing is also mandated on the ground that Plaintiff's employment with the City is governed by statute, not contract.  As Judge O'Neill ruled and the Ninth Circuit affirmed, Plaintiff cannot proceed with this cause of action as a matter of law.

1      **D.**  **Defendant's Request that Plaintiff Be Declared Vexatious**

2  **Litigant**.

3      Defendant requests that Plaintiff be declared a vexatious

4  litigant with regard to his repeated claims that the City

5  discriminated against him in failing to promote him to Wastewater

6  Treatment Plant Supervisor and preclude him from filing future

7  lawsuits against the City involving such claims without prior

8  leave of Court.  In *Molski v. Evergreen Dynasty Corp.,* 500 F.3d

9  1047, 1057 (9th Cir.2007), the Ninth Circuit held:

10             The All Writs Act, 28 U.S.C. § 1651(a),
               provides district courts with the inherent
11             power to enter pre-filing orders against
               vexatious litigants ... However, such pre-
12             filing orders are an extreme remedy that
               should rarely be used ... Courts should not
13             enter pre-filing orders with undue haste
               because such sanctions can tread on a
14             litigant's due process right of access to the
               courts ... A court should enter a pre-filing
15             order constraining a litigant's scope of
               actions in future cases only after a cautions
16             review of the pertinent circumstances.

17             Nevertheless, '[f]lagrant abuse of the
               judicial process cannot be tolerated because
18             it enables one person to preempt the use of
               judicial time that properly could be used to
19             consider the meritorious claims of other
               litigants.'  *De Long*, 912 F.2d at 1148 ...
20             Thus, in *De Long*, we outlined four factors
               for district courts to examine before
21             entering pre-filing orders.  First, the
               litigant must be given notice and a chance to
22             be heard before the order is entered ...
               Second, the district court must compile 'an
23             adequate record for review.' ... Third, the
               district court must make substantive findings
24             about the frivolous or harassing nature of
               the plaintiff's litigation ... Finally, the
25             vexatious litigant order 'must be narrowly
               tailored to closely fit the specific vice
26             encountered.' ....

1    Defendant's request is DENIED WITHOUT PREJUDICE.  As the

2  Court advised Plaintiff at the hearing, Plaintiff cannot continue

3  to ignore rulings by this Court or rulings by the Courts in his

4  prior cases without the risk of a monetary and/or terminating

5  sanction as well as a pre-filing order.  Plaintiff is required to

6  familiarize himself and  comply with Rule 11, Federal Rules of

7  Civil Procedure.  In addition, Plaintiff, even though proceeding

8  *in pro per*, may be sanctioned pursuant to 28 U.S.C. § 1927 or

9  this Court's inherent power, if he unreasonably and vexatiously

10 multiplies these proceedings, *Wages v. I.R.S.,* 915 F.2d 1230,

11 1235-1236 (9th Cir.1990).

<u>CONCLUSION</u>

13    For the reasons stated:

14    1.  Defendant's motion to dismiss and to strike is GRANTED

15 IN PART WITHOUT LEAVE TO AMEND AND WITH PREJUDICE, GRANTED IN

16 PART WITH LEAVE TO AMEND, AND DENIED IN PART.

17    2.  Plaintiff shall file a Second Amended Complaint in

18 accordance with the rulings set forth above within 20 days of the

19 filing date of this Memorandum Decision and Order.  Failure to

20 timely comply will result in the dismissal of this action.

21    IT IS SO ORDERED.

22    Dated:   **November 3, 2008**        **/s/ Oliver W. Wanger**
                                            UNITED STATES DISTRICT JUDGE

32